# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TENNESSEE GAS PIPELINE COMPANY, L.L.C., | NO. 3:12-CV-01477 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| PERMANENT EASEMENT FOR 7.053 ACRES, PERMANENT OVERLAY EASEMENT FOR 1.709 ACRES AND TEMPORARY EASEMENTS FOR 8.551 ACRES IN MILFORD AND WESTFALL TOWNSHIPS, PIKE COUNTY PENNSYLVANIA, TAX PARCEL NUMBERS 097.00-01-24 AND 097.00-01-24.001, KING ARTHUR ESTATES, ET AL., | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is the Motion for Partial Summary Judgment (Doc. 27) filed by Plaintiff Tennessee Gas Pipeline Company, L.L.C. ("Tennessee") in this condemnation action commenced under the Natural Gas Act, 15 U.S.C. 717 *et seq*. Tennessee seeks summary judgment on certain claims for damages by Defendant King Arthur Estates, LP ("King Arthur") which Tennessee argues are not recoverable as just compensation under federal law. For the reasons that follow, Tennessee's motion for partial summary judgment will be granted in part and denied in part.

## I. Background

**A.  Procedural History.**

Tennessee filed the Complaint in condemnation of property pursuant to Federal Rule of Civil Procedure 71.1 against King Arthur on or about July 31, 2012. (*See* Doc. 1). In the Complaint, Tennessee sought to acquire a permanent easement and temporary easements (the "Rights of Way")

on properties (the "subject properties") owned by King Arthur in Pike County, Pennsylvania. (*See id*.). Prior to the filing of the Complaint, Tennessee owned an existing permanent easement of varying width across King Arthur's property. (*See id*. at ¶ 15; *see also* Doc. 3, ¶ 15).

On October 2, 2012, a Stipulated Order was entered granting Tennessee the right to access and possess the Rights of Way as identified in the Complaint. (*See* Doc. 10). Tennessee subsequently posted the bond as required in the Stipulated Order and took access and possession of the Rights of Way. (*See* Doc. 11).

After the action was administratively reopened, (*see* Doc. 14), the parties engaged in discovery pertinent to the determination of just compensation. (*See*, *e.g.*, Doc. 16). Following the close of discovery, Tennessee filed the instant motion for partial summary judgment and supporting documents on July 29, 2016. (*See* Docs. 27-29). King Arthur's opposition was timely submitted on September 2, 2016, (*see* Doc. 33), and Tennessee's reply brief in further support of its motion was timely filed on September 20, 2016. (*See* Doc. 38). Tennessee's motion for partial summary judgment is thus ripe for disposition.

**B.     Pertinent Factual Background.**

During the course of discovery, the parties identified and deposed a number of experts pertaining to the determination of just compensation in this action. First, King Arthur retained John McChesney ("McChesney") as its appraiser to provide a valuation of the subject properties. (*See* Doc. 28 (Tennessee's Statement of Material Facts ("Tennessee's SMF")), ¶ 4; Doc. 33-1 (King Arthur's Statement of Material Facts ("King Arthur's SMF")), ¶ 4). According to McChesney, the subject properties consist of eighteen (18) parcels covering approximately 975 acres and were worth $3,656,000.00 prior to the taking of the Rights of Way. (*See* Tennessee's SMF, ¶ 5; King Arthur's SMF, ¶ 5). After the taking of the Rights of Way, though, McChesney testified that the subject properties are worth $1,682,000.00. (*See* Tennessee's SMF, ¶ 7; King Arthur's SMF, ¶ 7). Moreover, McChesney opined that the value of timber taken from the property by Tennessee was

2

$18,411.00. (*See* Tennessee's SMF, ¶ 9; King Arthur's SMF, ¶ 9). McChesney also concluded that King Arthur suffered additional damages as a result of the condemnation of the Rights of Way, including professional fees in the amount of $62,798.00, development costs totaling $915,408.00 and timber replacement and reforestation costs of $159,555.00. (*See* Tennessee's SMF, ¶ 11; King Arthur's SMF, ¶ 11). Additionally, McChesney testified that the negative market impact as a result of the taking of the Rights of Way equaled $1,909,160.00. (*See* McChesney Dep., 97:25-98:9).

Tennessee's appraisal expert, Richard Drzewiecki ("Drzewiecki"), opined that the pre-taking market value of the subject properties was $4,029,000.00, while the post-taking market value of the properties is $3,884,000.00. (*See* Drzewiecki report, 5). Drzewiecki further opined that it would cost $57,055.34 to reforest the temporary workspace. (*See id*. at 66). Drzewiecki also concluded that King Arthur suffered severance damages in the amount of $44,440.00 as a result of the pipeline easement because "land immediately adjacent to the pipeline will be somewhat less desirable after the imposition of the easement and development of the line." (*Id*. at 65).

Michael Weeks ("Weeks"), a civil engineer, was retained by King Arthur to assess the adverse impacts associated with the taking of the Rights of Way related to Tennessee's installation of the pipeline. (*See* Weeks Dep., 73:9-20). The adverse impacts identified by Weeks include the construction of water bars, over-clearing and taking outside of the permanent and temporary easements, and the impacts associated with the future development of the property. (*See id*. at 73:21-74:14).

King Arthur retained Steven Vitale, PhD ("Vitale"), as an expert to "provide technical analysis of the impact of the gas main on the property." (*See* Vitale Dep., 54:3-6). Vitale was asked to assess the impact the pipeline would have on the property in terms of its potential for development. (*See id*. at 55:17-24). Specifically, Vitale evaluated the impact of the pipeline on properties to be constructed in the pipeline's vicinity. (*See id*. at 56:14-15). James Leary ("Leary") was retained by King Arthur to appraise the value of timber and replanting costs associated with the Rights of Way

3

and restoration of the temporary easements. (*See* Tennessee's SMF, ¶ 28; King Arthur's SMF, ¶ 28). And, lastly, Davis Chant ("Chant") was retained as King Arthur's marketing, land development, and highest and best use consultant. (*See* Tennessee's SMF, ¶ 38). According to Chant, the Vitale report alters the highest and best use of the subject properties and that the existence of the pipeline seriously damages King Arthur's ability to sell the properties. (*See id.* at ¶ 39).

## II. Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing

4

on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the non-moving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. Discussion

The threshold dispute between the parties is whether state or federal law governs the determination of just compensation in condemnation actions brought pursuant to the Natural Gas Act. Whereas Tennessee contends that the issue is resolved by reference to federal substantive law, (*see* Docs. 29, 7-9; 38, 2-15), King Arthur maintains that Pennsylvania law provides the appropriate standard to determine just compensation in this case. (*See* Doc. 33, 5-20).

5

A.  **Federal Substantive Law Applies to Compensation Determinations in Condemnation Actions Brought Pursuant to the Natural Gas Act.**

Section 717(a) of the Natural Gas Act states "that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." 15 U.S.C. § 717(a). Relevant to the determination of just compensation is § 717f(h) of the Natural Gas Act, which provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: Provided, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

15 U.S.C. § 717f(h).

I have previously considered whether federal or state law applies to determining just compensation under the Natural Gas Act. *See Tennessee Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres and Temporary Easements for 5.4130 Acres in Shohola Twp., Pike Cnty.* (*Fox Hollow*), No. 11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014). In *Fox Hollow*, the defendant argued, like King Arthur does here, that just compensation in a condemnation action brought pursuant to the Natural Gas Act should be determined by reference to state law. *See id.* at *6-8.[1] I disagreed and held that "federal law governs the substantive determination of just compensation in a condemnation action commenced under the Natural Gas Act." *Id.* at *9. As was the case when I decided *Fox Hollow*, neither the United States Supreme Court nor the United States Court of Appeals for the Third Circuit has addressed whether federal or state law should be utilized in calculating just

---

[1]  King Arthur is represented in this action by the same counsel that represented the defendant in *Fox Hollow*.

compensation in condemnation actions under the Natural Gas Act. Further, courts that have addressed this issue in the interim since *Fox Hollow* have split on whether federal or state law governs the measure of compensation in condemnation proceedings under the Natural Gas Act. *See*, *e.g.*, *Sabal Trail Transmission, LLC v. Real Estate*, No. 16-063, 2017 WL 2783995, at *7 (N.D. Fla. June 27, 2017) (applying state law); *Equitrans, L.P. v. 0.56 Acres More or Less of Permanent Easement Located in Marion County, W. Va.*, No. 15-106, 2017 WL 1455023, at *1 (N.D. W. Va. Apr. 21, 2017) (applying state law); *Columbia Gas Transmission, LLC v. An Easement to Construct, Operate and Maintain a 20-Inch Gas Transmission Pipeline Across Properties in Washington County, Pa.*, No. 16-1243, 2017 WL 1355418, at *2 (W.D. Pa. Apr. 13, 2017) (applying federal law); *Columbia Gas Transmission, LLC v. 252.071 Acres, More or Less, in Baltimore Cnty., Md.*, No. 15-3462, 2016 WL 7167979, at *3 (D. Md. Dec. 8, 2016) (applying federal law). Thus, finding the state of the law on this issue to be the same as when *Fox Hollow* was decided, there is no reason to depart from my prior decision and just compensation owed to King Arthur by Tennessee in this action will be determined through application of federal law.

**B.     Tennessee is Entitled to Summary Judgment, in part, on King Arthur's Claims for Damages.**

In condemnation actions under the Natural Gas Act, "'[i]t is well established that the landowner has the burden of proving the just compensation owed for the condemned property.'" *Millennium Pipeline Co. v. Certain Permanent and Temporary Easements*, 919 F. Supp. 2d 297, 299 (W.D.N.Y. 2013) (quoting *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 7 (1st Cir. 2009)); *Columbia Gas Transmission Co. v. Rodriguez*, 551 F. Supp. 2d 460, 462 (W.D. Va. 2008). A landowner generally satisfies this burden by "producing competent expert testimony as to the land's value before and after the taking." *Millennium Pipeline*, 919 F. Supp. 2d at 299 (citing *Hardy Storage Co. v. An Easement to Construct*, *etc.*, No. 2:07CV5, 2009 WL 900157, at *3 (N.D. W. Va. Mar. 31, 2009)).

Moreover, in cases such as this involving a "partial taking," "just compensation is measured by the difference between the market value of the entire holding immediately before the taking and the remaining market value immediately thereafter of the portion of property rights not taken."

7

*United States v. 68.94 Acres of Land*, 918 F.2d 389, 393 n.3 (3d Cir. 1990) (citing *U.S. v. 91.90 Acres of Land, Situate in Monroe County, Mo.*, 586 F.2d 79, 86 (8th Cir. 1978), *cert. denied* 441 U.S. 944, 99 S. Ct. 2162, 60 L. Ed. 2d 1045 (1979)); *see also United States v. 13.98 Acres,* 702 F. Supp. 1113, 1116 (D. Del. 1988).

In cases involving partial takings, the landowner's compensation includes "any element of value arising out of the relation of the part taken to the entire tract." *United States v. Miller*, 317 U.S. 369, 376, 63 S. Ct. 276, 87 L. Ed. 336 (1943). Restated, "[i]f the value of the remaining land, on a unit basis, diminishes when the condemned parcel is removed from the larger whole, the landowner is entitled to compensation 'both for that which is physically appropriated and for the diminution in value to the non-condemned property.'" *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (quoting *United States v. 33.5 Acres, Okanogan County*, 789 F.2d 1396, 1398 (9th Cir. 1986)). The diminution in value of the remaining property is referred to as severance damages. *See id*.

> However, it is improper to think of severance damage as a separate item of just compensation apart from the before and after valuation of the land. In a partial taking, the before and after method of calculation automatically incorporates the concept of severance damages. If fear of a hazard would affect the price a knowledgeable and prudent buyer would pay to a similarly well-informed seller, diminution in value caused by that fear may be recoverable as part of just compensation. However, severance damages based wholly on speculation and conjecture are precluded. The landowner has the burden of proof in establishing the damage.

*United States v. 6.24 Acres of Land*, 99 F.3d 1140 (6th Cir. 1996) (internal citations and quotations omitted); *see also United States v. 91.90 Acres of Land,* 586 F.2d 79, 86 (8th Cir. 1978).

Here, Tennessee argues that it is entitled to summary judgment on King Arthur's claims for: (1) damages for expert fees, additional development costs, and timber loss and reforestation; (2) "threat zone" damages; and (3) trespass damages. (*See* Docs. 29, 9-24; 38, 17-31).[2] Tennessee's

---

[2] As King Arthur indicates that it is not raising a trespass claim in this action, (*see* Doc. 33, 28-31), Tennessee's arguments on this issue need not be addressed in greater detail. Should King Arthur attempt to present evidence of such a claim at trial, the matter will be addressed at that time. Furthermore, based on the evidence of record, I will deny Tennessee's motion for summary judgment as to damages relating to the construction of water bars on the temporary and

8

motion will be granted in part.

1. **King Arthur's Claims for Damages for Expert Fees, Additional Development Costs, and Timber Loss and Reforestation.**

King Arthur does not dispute that it seeks damages relating to professional fees, development costs and timber replacement and reforestation costs. (*See* King Arthur's SMF, ¶ 11). With respect to King Arthur's claims for professional fees and development costs, such damages are not recoverable here. *See Fox Hollow*, 2014 WL 690700, at *10-12; *see also R & J Holding Co. v. Redevelopment Authority of Cnty. of Montgomery*, 670 F.3d 420, 433 n.10 (3d Cir. 2011) (just compensation under the Fifth Amendment does not include appraisal fees incurred in a condemnation action); *Questar Pipeline Co. v. 94.86 Acres of Land*, No. 5-306, 2011 WL 900368, at *2 (D. Utah Mar. 14, 2011) (compensation does not include lost profits, lost development opportunities or frustration of plans). Tennessee is therefore entitled to summary judgment on King Arthur's claims for damages for professional fees and development costs because theses expenses are not compensable as just compensation in this action under the Natural Gas Act.

However, Tennessee's motion for summary judgment on King Arthur's claim for damages related to restoration of the temporary easement to its pre-taking condition will be denied. As I previously determined in *Fox Hollow*, a landowner can recover cost associated with the restoration of damaged temporary workspace. *See Fox Hollow*, 2014 WL 900368, at *12. As a dispute of fact exists regarding the amount of damages caused by Tennessee to the temporary easement, Tennessee is not entitled to summary judgment on King Arthur's claim for these damages.[3]

---

permanent easements. (*See*, *e.g.*, McChesney report, 4).

[3] Tennessee argues that it is entitled to summary judgment on King Arthur's claim for damages to the temporary easement because King Arthur cannot establish diminution in value due to the loss of trees based on the record evidence. (Doc. 29, 20-22). But, "[i]nability to show a diminution in value does not preclude recovery, as damages may be assessed based on the cost of cure, *i.e.* the costs associated with mediating or preventing the injury." *Otay Mesa Prop., L.P. v. United States*, 110 Fed. Cl. 732, 742 (Fed. Cl. 2013).

9

## 2. King Arthur's Claim for "Threat Zones" Damages.

Tennessee also argues that it is entitled to summary judgment on King Arthur's claim for compensation due to the existence of "threat zones" on the property. (See Doc. 29, 24-25). According to Tennessee, the record is devoid of any evidence that market participants will pay less for the subject properties because of a fear of pipelines. (*See id.*; *see also* Doc. 38, 31-32). Tennessee's motion for summary judgment as to this claim for damages will be denied.

As stated, where fear of a hazard would impact the price a buyer would pay to an informed seller, diminution in value caused by that fear may be recoverable as part of just compensation provided, of course, that severance damages cannot be based wholly on speculation and conjecture. *See Fox Hollow*, 2014 WL 690700, at *12. Here, King Arthur retained Vitale to provide a technical analysis of the impact of the pipeline on the property. (*See* Vitale Dep., 54:3-8). And, McChesney testified that the threat levels identified by Vitale in his report is an implied consideration for market participants with the presentation of a pipeline. (*See* McChesney Dep., 188:10-25). In addition, Tennessee's appraiser opines that the land immediately adjacent to the pipeline is less desirable after the development of the pipeline. (*See* Drzewiecki report, 65). Given this testimony, the record contains sufficient evidence that fears of pipeline impact the value of the subject properties. As such, Tennessee's motion for summary judgment as to these damages will be denied.[4]

## IV. Conclusion

For the above stated reasons, Tennessee's motion for partial summary judgment will be granted in part and denied in part.

An appropriate order follows.

| August 30, 2017 | /s/ A. Richard Caputo |
|---|---|
| Date | A. Richard Caputo |
| | United States District Judge |

---

[4] In its reply brief, Tennessee suggests that Vitale's testimony has no relevance to the determination of just compensation in this action. (*See* Doc. 38, 32). While Tennessee's arguments imply that Vitale's expert opinion should be excluded, Tennessee has not clearly moved to exclude Vitale's expert opinion or to otherwise strike his expert report. Thus, I will not rule on the admissibility of Vitale's opinions and/or report at this time.